**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**UNITED STATES OF AMERICA,**

**Case No. 4:06cr10-RH**

**vs.**                                                    **Case No. 4:09cv96-RH/WCS**

**WILLY ANTHONY OLIVER,**

**Defendant.**

_____/

## REPORT AND RECOMMENDATION TO DENY AMENDED § 2255 MOTION

Pursuant to a number of court orders, docs. 160, 161, 163, 165, Defendant

submitted an amended motion to vacate sentence pursuant to 28 U.S.C. § 2255. Doc.

166. The Government filed a response. Doc. 168.

Defendant complains that he is unable to reply as the Government did not

provide the record to him, or provide the referenced portions of the record. Docs. 169,

171, 172. Defendant was advised that if he did not have the transcripts (which were

prepared for his direct appeal), then

> he shall send a letter to appellate counsel asking for the record within ten
> days from the date of this order. If Defendant files a second motion for
> extension of time he must attach a copy of his letter and any response
> from counsel in support.

Doc. 170 (granting Defendant's doc. 169 as a motion for extension of time).

Defendant has now supplied his letter to appellate counsel Gary Printy, stating

that he does not understand what documents the Government refers to in the response,

that he does not have all transcripts, and asking:

> Will you please review the Government's response and see if you can
> figure out what transcripts and documents I need? I apologize, as a lot of
> my paperwork did not show up in my property via my transfer to TX.

Doc. 171, p. 1.[1] Printy's letter in response acknowledges receipt of Defendant's letter

and advises, "I cannot help you with your case." *Id.*, p. 2.

In the second request for records and extension of time, Defendant asserts that

he has two transcripts, one for July 14, 2006, (13 pages), and one for September 14,

2006, (9 pages). Doc. 172.[2] He states: "I have no docket sheet to identify what AUSA's

'R-??' identify.[[3]] I object to AUSA's summary of the Court's statements and his

purposeful failure to exactly quote what was said by me and the context of those

---

[1] Defendant did not allege to counsel, as he did to this court, that he had *never* received a copy of his file. Doc. 169. Defendant was in custody at FCI in Marianna, Florida, when he mailed the initial § 2255 motion on March 4, 2009. Doc. 159. He was placed in transit on March 9, 2009, and arrived at FCI in Big Springs, Texas, on May 7, 2009. Doc. 162 (request for enlargement of time). Defendant anticipated it might take a month until his legal files were returned to him. *Id.*

[2] The July 14 and September 14 transcripts were filed as docs. 127 and 126, respectively. As Defendant has them, copies of those transcripts need not be supplied to him with the other transcripts.

[3] As explained in the Government's response, "[r]ecord citations are to document and, if necessary, page." Doc. 168, p. 2, n. 1. For example, Respondent claims that the court discussed the 20 year minimum mandatory sentence "at least four times" at rearraignment, citing R125, pp. 29, 31-36. *Id.*, p. 2. Filed as doc. 125 (and indicated in the docket entry) is the transcript of rearraignment proceedings held on of July 6, 2006.

hearings." *Id.* Defendant claims the Government's response is "evasive," and that counsel "attempts to mischaracterize" the claims and procedural history. *Id.*

Defendant's second request for records and extension of time is granted in part by separate order. The court will provide him with a copy of the docket and of the transcripts of July 6, October 5, December 7, and December 14, 2006. Docs. 125, 128, 150, and 151, respectively. Additional time is unnecessary for a reply, however. Defendant will have the transcripts and may reference them in objections (if any) to this report and recommendation.

By way of brief background, following a guilty plea, Defendant was convicted of conspiracy to distribute and possess with intent to distribute more than five kilograms of cocaine and more than 100 kilograms of marijuana pursuant to 21 U.S.C. § 841(a)(1) and was sentenced to the minimum mandatory term of 20 years (240 months). Doc. 157 (mandate and opinion on appeal). As discussed ahead, the statutory minimum mandatory was due to Defendant's prior conviction in Texas pursuant to 21 U.S.C. § 841(b)(1)(A). That statute raised the minimum sentence of ten years to twenty years for a person who commits the offense "after a prior conviction for a felony drug offense has become final."

Before addressing Defendant's individual claims, it is noted that this case is unusual as ineffective assistance of counsel was raised and addressed on direct appeal. Defendant was represented by John Eagan until the continued sentencing proceeding, and then Gary Printy was appointed as substitute counsel.[4] Printy filed a

---

[4] At the hearing of September 14, 2006, the court raised the question of whether Defendant's prior marijuana conviction might be part of the same conspiracy involved

motion to withdraw guilty plea, doc. 119, and a hearing was held on December 7, 2006.

Doc. 150 (transcript). Printy said that, depending on whether Defendant's conviction out

of Willacy County, Texas would count as a prior conviction under § 841, they might not

need to pursue the motion to withdraw. Doc. 150, pp. 5-7. The court thought it was

clear that it would count for that, though not for purposes of calculating the guidelines

range; the Government cited United States v. Hansley, 54 F.3d 709 (11th Cir. 1995) in

support. *Id.*, pp. 8-13.

> During a break in the testimony, the court advised:

> I can tell you that I have read [Hansley]. That case does set forth the law
> of the circuit. In accordance with what I've told you earlier, when a
> conviction becomes final, and the defendant thereafter continues in a
> conspiracy and is convicted for the conspiracy offense that continued after
> the date on which the other offense became final, the other offense does
> count as a prior felony offense for purposes of 21, U.S.C., Section 841,
> even when that other offense was committed as a part of the conspiracy at
> issue. More recent circuit cases continue to treat that as the law based on
> that decision.

*Id.*, pp. 63-64

> Both Defendant and John Eagen testfied at the motion hearing. *Id.*, pp. 13-40,

41-62. The hearing was continued to December 14, 2006, so that the Government

could present the testimony of Investigator Joshua Lowery . Doc. 151. Officer Lowery

testified as to what codefendant Alvarado told him about the conspiracy, and about

---

here, and whether it should therefore not be counted (as a criminal history point or for
career offender purposes) in determining the sentencing range under the guidelines.
Doc. 127, pp. 3-8. Defendant later filed pro se objections to the PSR, docs. 102 and
103, and his dissatisfaction was brought up at the sentencing proceeding held on
October 5, 2006. Doc. 128 (transcript). Defendant said he lost confidence in counsel
when the court raised the sentencing issue, and he did not believe that Eagen was
acting in his best interest. Doc. 128, pp. 9-10.

interviews conducted with Defendant.  *Id.*, p. 4-15.  Alvarado told Lowery that there were a total of 14 trips between Tallahassee and Texas, nine by himself for cocaine going to Defendant, and five trips by Defendant to pick up cocaine.  *Id.*, pp. 5.  Alvarado said there was a total of 16 kilograms of cocaine transported in the 14 trips.  *Id.*  Lowery also said that  Defendant told Lowery that there were a total of seven trips involving 13 kilograms of cocaine.  *Id.*, p. 8.

Lowery said that in the time leading up to Defendant's plea, there was no concern by law enforcement about whether Defendant was being untruthful or uncooperative, and Defendant was even permitted to remain on release for a week after the plea to allow cooperation.  *Id.*, p. 10.  During that release period there was another interview, and Defendant was shown photographs of people they expected he would know, particularly Rolando Pena, and Defendant said he did not recognize any of them.  *Id.*, p. 11, 13.  It was at that point that law enforcement believed that Defendant was not fully cooperating, and Lowery told the federal prosecutor.  *Id.*, pp. 13-14.  At a later interview, after Defendant was in custody, Defendant admitted that he lied in the previous interview and *did* recognize Rolando Pena and Saul Sanchez.  *Id.*, pp. 11-12.  The Government argued that Defendant had a "golden opportunity" during his release period to go out proactively and cooperate, yet Defendant failed to make calls or do anything; and even when shown photographs, he was admittedly not truthful in saying he did not recognize anyone.  *Id.*, p. 20.

At the hearing on Defendant's motion to withdraw his plea, it was agreed by Mr. Printy and the court that Eagen's estimate, that Defendant might get 5-10 years if he earned a substantial assistance motion, was a good estimate.  *Id.*, p. 23.  Counsel

agreed with the court's statement that, "[t]he best thing he could do, if he's got the best lawyer in America, the best advice he's going to get is, your best chance is to plead and cooperate." *Id.* Though it was argued that the better course would have been for Eagen to get a proffer letter from the Government (which was not obtained here), it would not have made a difference in this case. *Id.*, pp. 22-24, 32.

The court found as follows:

My finding is that on May the 10th, Mr. Oliver told Mr. Lowery that Mr. Oliver had made seven trips involving cocaine or been involved with seven trips involving cocaine; that the amount was 2 kilos six times and 1 kilo a seventh time.

I reach that decision as the finder of fact. I find Mr. Lowery's testimony about that more credible than Mr. Oliver's for a number of reasons. I won't try to list them all. . . . I consider all of those factors that I tell juries to consider in determining the credibility of witnesses. My best judgment on that is that Mr. Lowery's testimony is true.

*                    *                    *

My finding of what happened in this case is that Mr. Oliver was candid as of May the 10th. At least mostly candid. More candid than in his more recent testimony.

My finding is that, for whatever reason, after the time the plea was entered, he was not completely candid. He failed to identify photographs. He now admits that he told the officers he didn't recognize people that he, in fact, recognized. There is an institutional prejudice to the government and to the administration of justice if a defendant can give false information in an effort to get a substantial assistant motion and the, if unsuccessful, withdraw his plea and suffer no harm.

*                    *                    *

I did want to note in connection with the earlier findings that Mr. Oliver well knew, because I went over it with some care, that he was looking at a 20-year minimum mandatory, unless he got a substantial assistance motion; and he knew, because I told him at some length, that the best way to get a substantial assistance motion was to be completely truthful.

*Id.*, pp. 25-26, 29, 31.

Relying on the four part test of <u>United States v. Buckles</u>, 843 F.2d 469 (11th 1988), *cert. denied*, 490 U.S. 1099 (1989), the court found that Defendant Oliver was not entitled to withdraw his plea. *Id.*, pp. 26-30 (also citing <u>United States v. Freixas</u>, 332 F.3d 1314 (11th Cir. 2003)). The court found that the case "got off of the track" because Defendant was not forthcoming, not for "any failure to get better advice." *Id.*, p. 32. Under <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the court found it "clear that there's not been prejudice as a result of anything that Mr. Eagen did. Mr. Oliver would have pled guilty anyway." *Id.*[5]

The court proceeded with sentencing. The PSR as supplemented reflected a lower guidelines range than before,[6] not counting the Texas conviction for career criminal purposes, but the Texas offense was a drug felony offense resulting in a twenty year minimum mandatory prison sentence pursuant to § 841. *Id.*, pp. 33, 42. *See also* PSR, Supplemental Addendum, ¶ ¶ 2-6 (calculating a guidelines range of 135-168 months based on a total offense level of 31 with a criminal history category III; due to

_____

[5] Under <u>Strickland</u>,"[a] convicted defendant making a claim of ineffective assistance of counsel must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment," and must also "affirmatively prove prejudice." 466 U.S. at 690, 693-694, 104 S.Ct. 2066-68, 80 L.Ed.2d 674 (1984). To establish prejudice due to ineffectiveness of counsel in the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill v. Lockhart</u>, 467 U.S. 52, 58-59, 106 S.Ct 366, 370, 88 L.Ed.2d 203 (1985).

[6] Using the Texas conviction in the guidelines calculation, Defendant's range as a career offender, based on an offense level of 34 and criminal history category VI, was 262-327 months. PSR ¶ ¶ 32, 34, 38, 41, and 62.

the minimum mandatory prison sentence, the low end of the guidelines range remained at 240 months).[7]

There was some discussion over whether the guidelines should be recalculated as a result of Defendant's actions at the motion hearing, to deny credit for acceptance of responsibility and add two points for obstruction of justice for perjury. Doc. 151, pp. 34-38. The court made no findings as to acceptance or obstruction under the guidelines because they made no difference. The low range would be below 240 months and the decision would still be to impose a sentence of 240 months. *Id.*, p. 43, 44. Defendant was advised that if the Government decided to allow him an opportunity to cooperate after sentencing, his "best chance" for a substantial assistance motion was to be completely candid and truthful. *Id.*, p. 45.

On appeal, Defendant challenged the denial of his motion to withdraw guilty plea, contending the plea was not knowing and voluntary because counsel was ineffective. Doc. 157 (mandate), attached opinion p. 2. He claimed that counsel did not discuss the possibility of a mandatory minimum sentence, told Defendant he would be sentenced to less than 20 years if he cooperated with the Government, and failed to attend meetings between Defendant and the Government about cooperation. *Id.*

The Eleventh Circuit found that Defendant "received close assistance from his lawyer." *Id.*, p. 4. Counsel said he reviewed the plea agreement with Defendant "paragraph by paragraph," and the court found they conferred many times during the

---

[7] Assuming it was relevant conduct, the weight of marijuana involved in the Texas offense would be added to the drugs in the conspiracy in this case to determine Defendant's base offense level. The additional weight of marijuana (as reflected in the Texas indictment), however, did not affect Defendant's base offense level. ¶ 2.

plea hearing, which lasted over an hour and a half and included recesses so they could confer. *Id.*

The Eleventh Circuit also found Defendant's plea was knowing and voluntary. *Id.* It found that this court explained the charges and drug quantity, and told Defendant that if he was not involved with these quantities, he should plead not guilty. *Id.* Defendant had agreed under oath that he helped distribute more than five kilograms of cocaine. *Id.*, pp. 4-5.

> In addition, the district court told Oliver that, subject to limited exceptions described by the district court, he faced a 20-year mandatory minimum sentence, which was also discussed in Oliver's plea agreement. And Oliver's lawyer testified that, before the plea hearing, he discussed with Oliver that Oliver was facing a 20-year mandatory minimum sentence.

*Id.*, p. 5 (footnote 2 omitted, noting that Defendant told the court at the time of his plea that he read the agreement "line-by-line and word-by-word.").

In the amended § 2255 motion, Defendant raises three related claims of ineffective assistance of counsel. He asserts as ground one that trial counsel failed to protect him from enhancement of his sentence based on his Texas conviction, by failing to make the Government meet its burden to provide certified copies of qualifying convictions. Doc. 166, p. 3. This claim warrants no discussion as it is contradicted by the record. *See* doc. 71 (with certified copies attached in support). The information pursuant to 21 U.S.C. § 851 was filed on May 30, 2006. Doc. 71. Attached were certified copies of the docket, waivers of probation fees, and the judgment of the District Court in Willacy County, Texas, case 4685-C. Doc. 71-1 in ECF.[8] As the exhibits were

---

[8] Electronic Case Filing. Since I am looking at the documents as scanned there are no original seals or marks; however it is apparent that the Government obtained

electronically filed, it cannot be determined from the docket alone if the Government had photocopies or original certified copies in hand. Either way, there is no indication that original certified copies could not have been obtained for filing. Moreover, Defendant admitted to the prior conviction as part of his guilty plea. Defendant is not entitled to relief on ground one.

Grounds two and three are addressed together. Defendant claims in ground two that counsel was ineffective for failing to object to impermissible double punishment based on the Texas conviction. *Id.* He contends that:

> The Supplement Addendum [to the PSR] correctly showed that my Texas conviction was "part of the instant offense" and removed the "prior Felony" points from my [U.S.S.G.] calculation of CHP [criminal history points]. Because the PSR was adopted as factual, it establishes I had no qualifying prior convictions. To trigger 851 enhanced sentence by using that Texas offense as relevant conduct then triggering 851, is impermissible multiple punishments my [attorney] did not know that they can't use a crime within a crime to raise my sentence.

*Id.*, pp. 3, 6 (continuation of claims). Defendant claims that, with a corrected offense level of 28 and criminal history category III, his guidelines range should have been 97-121 months. *Id.*, pp. 6.

In ground three, Defendant asserts ineffective assistance of appellate counsel for failing to appeal the "851 enhanced sentence," failing to raise the " 'Dead Bang' issue that I had no 'Qualifying prior conviction.' " *Id.*, p. 4. Defendant asserts that counsel

---

certified copies on March 21, 2006, for the purpose of attaching them to the § 851 motion filed May 30, 2006. The judgment itself was scanned into ECF in reverse order; pages 1-5 are in ECF as doc. 71-1, pp. 8-4, respectively. The last page of the judgment, signed by the presiding judge on February 24, 2003, was certified as a true copy on March 1, 2006. Doc. 71-1, p. 4.

objected,[9] and "should have appealed that very unclear issue of multiple punishments. And the relevant conduct issue." *Id.* He claims counsel failed to protect him at sentencing, and that, "[b]ut for my appellate [attorney] arguing a bad issue my sentence would be (97-121) months after accepting responsibility." *Id.*, p. 6.

At the outset, to the extent that Petitioner is attempting to relitigate ineffectiveness claims already decided on appeal, he may not do so by § 2255 motion. *See* United States v. Pitcher, 559 F.3d 120, 123-124 (2d Cir. 2009) (where federal defendant raised ineffective assistance of counsel on direct appeal, § 2255 ineffectiveness claim based on same facts and legal grounds was barred by the ruling on appeal); Thomas v. United States, 572 F.3d 1300, 1304-1305 and n. 4 (11th Cir. 2009) (assuming that law of the case doctrine could apply to bar collateral review of a claim which was raised on direct appeal, citing White v. United States, 371 F.3d 900, 902 (7th Cir. 2004) (applying doctrine, collecting cases from Fourth, Seventh, and Eighth Circuits).[10]

---

[9] Defendant references p. 4 of "Sent.Tx," and his own App. P. 5. *Id.*, pp. 4 and 11. The appendix iincludes pages 2-5 of the proceedings of September 14, 2006, at which time Defendant was still represented by Eagen (doc. 127 is the transcript in the file). At p. 4 the court noted that if the Texas offense was relevant conduct to this conspiracy, it would not count in the guidelines calculation, but this might not matter due to the statutory 20 year minimum mandatory, which "is based also on this same drug offense, but I think under the statute it doesn't matter this was part of the same conspiracy. All that matters is that the offense in the case at-bar continued after the conviction." Doc. 127, p. 4.

[10] As noted in Thomas, ineffective assistance of counsel claims are generally not considered sufficiently developed for purposes of direct review, and as the ineffectiveness claim there had not been considered or decided on appeal, law of the case did not bar § 2255 review. 572 F.3d at 1304-05 and n. 5, citing Massaro v. United States, 538 U.S. 500, 504, 123 S.Ct. 1690, 1693-94, 155 L.Ed.2d 714 (2003) (other citations omitted). The Court in Massaro found that ineffectiveness claims should be

Even aside from any prior determination that counsel was effective, Defendant is

not entitled to any relief.  It was noted at the hearing on his motion to withdraw his plea

that the Texas conviction counted for enhancement purposes under the statute even

though it did not count, under the sentencing guidelines, in determining Defendant's

criminal history score or to qualify him as a career offender.  The court cited <u>Hansley</u>,

and there is no showing that <u>Hansley</u> was inapplicable or distinguishable.  The <u>Hansley</u>

conspiracy involved importation of crack cocaine from South Florida to Georgia for

distribution.  Bennett, a defendant in <u>Hansley</u>, had a 1989 Georgia conviction for drug

possession, which was used to enhance his sentence under § 841(b)(1)(A).  54 F.3d at

714, 716.[11]  He argued that the 1989 conviction could not be used for enhancement

because it was related to an overt act of the federal conspiracy.  *Id.*, at 716-717.

> Bennett's Georgia conviction became final on March 20, 1989.  He,
> however, continued to engage in the Hansley conspiracy until his arrest on
> November 9, 1990. . . .  Bennett continued to engage in drug-related,
> conspiratorial activity for over eighteen months.  Although Bennett's 1989
> conviction may have resulted from criminal conduct taken in furtherance of
> the Hansley conspiracy, he continued to engage in the conspiracy for a
> significant period of time.  Thus, the district court did not clearly err in
> enhancing Bennett's sentence based on his 1989 conviction.

*Id.*, at 717 (citations omitted).

The superseding indictment in this case charged that Defendant and Alvarado

were in a conspiracy between about January 2003 and August 19, 2005.  Doc. 48.

According to the PSR, Defendant distributed marijuana from at least January of 2001

---

allowed under § 2255 whether or not they could have been raised on appeal.  *Id.*

[11] As he had two or more prior felony drug convictions, the minimum mandatory for
Bennett was life imprisonment under § 841(b)(1)(A).

and powder cocaine from at least early 2003, but law enforcement first learned of the conspiracy when Torreya Hayes (a co-defendant) was arrested on August 14, 2005. PSR, ¶ 10.[12] Searches were conducted of Defendant's residence and Salazar's residence (in Texas) on August 16 and August 19, 2005, respectively. PSR, ¶ ¶ 15 and 16. Found in Defendant's residence were wire transfer receipts to Gunaro Alvarado dated August 9, August 12, and August 13, 2005, each for $900, pp 15. Receipts for money orders, rental car receipts and flights to Texas were located but the dates are not indicated. *Id.* Defendant was federally arrested on May 2, 2006, and detained until May 10, 2006. PSR p. 1; doc. 62 (minutes for initial appearance on May 10, 2006).

The date of the possession of marijuana offense in Texas was October 21, 2002. PSR, ¶ 38. Defendant entered a plea, received a suspended sentence, and was placed on probation on February 7, 2003. *Id.* That conviction presumably became final on or about March 10, 2003. See Tex. R. App. P. 26.2(a) (allowing 30 days from the day sentence is imposed or suspended in which to appeal). Defendant continued his involvement in this federal conspiracy until at least August 13, 2005, the date of the money order to Alvarado for $900. This was 29 months after the Texas conviction became final, far longer than the period at issue in Hansley.

The Eleventh Circuit has not set a minimum time limit between the prior conviction and the activity in the federal conspiracy, or the degree of criminal activity required. United States v. Williams, 469 F.3d 963, 967 (11th Cir. 2006), discussing

---

[12] Alvarado, Torreya Haynes, and Marissa Salazar were named in the initial indictment. Doc. 1. Haynes and Salazar pleaded guilty on April 13, 2006, before the superseding indictment was returned on May 2, 2006. *See* docs. 38, 41, and 48; PSR p. 2.

<u>Hansley</u> and <u>Hagins v. United States</u>, 267 F.3d 1202 (11th Cir 2001). In <u>Williams</u>, as here, the defendant was charged with conspiracy to possess with intent to distribute five or more kilograms of cocaine. 469 U.S. at 965. The court rejected the argument that the involvement with five or more kilograms had to occur after the prior conviction became final, as he continued in the conspiracy after the prior conviction was final. *Id.,* at 965-967. The court also rejected the argument that a conviction final on July 28, 2005, could not be used where law enforcement seized two kilograms (intended for defendant) of cocaine on September 7, 2005, as there was clearly "continued involvement" in criminal activity after the prior conviction. *Id.,* at 967-968. In <u>Hagins</u>, the defendant claimed ineffective assistance of counsel for failing to object to enhancement (a 20 year minimum mandatory) based on a prior conviction for drug activity which was part of the same conduct as the federal drug conspiracy. The court said that defendant continued to engage in the conspiracy after his state conviction as evidenced by a recording of a telephone call and cash found at the time of his arrest, which he admitted was to be used to purchase drugs. Relying on <u>Hansley</u> and <u>United States v. Howard</u>, 115 F.3d 1151, 1158 (4th Cir.1997) (which followed <u>Hansley</u>), the court found that the only thing that stopped participation in the federal drug conspiracy was his arrest, and the "argument that the state conviction was part of the same course of conduct and cannot serve as a predicate conviction for enhancement purposes is without merit." 267 F.3d at 1208. Prejudice under <u>Strickland</u> in that case could not be shown. *Id.*

Here too, as this court already determined when it declined to permit withdrawal of the guilty plea, the Texas conviction counted as a prior conviction to cause him to be

Case Nos. 4:06cr10-RH and 4:09cv96-RH/WCS

subjected to a minimum 20 year sentence pursuant to 21 U.S.C. § 841(b)(1)(A).

Defendant cannot show error or prejudice with respect to the effect his Texas conviction had upon his sentence.

It is therefore respectfully **RECOMMENDED** that the amended § 2255 motion, doc. 166, be **DENIED WITH PREJUDICE**.

**IN CHAMBERS** at Tallahassee, Florida, on March 31, 2010.


s/    William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**